1  AARON A. BUCKLEY (SBN 202081)
   aaron.buckley@quarles.com
2  NORA J. STEINHAGEN (SBN 338969)
   nora.steinhagen@quarles.com
3  **QUARLES & BRADY LLP**
   101 West Broadway, Ninth Floor
4  San Diego, California 92101-8285
   Telephone: 619-237-5200
5  Facsimile: 619-615-0700

6  Attorneys for Defendants Wolfspeed, Inc. and
   Edgar Bustamante

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| RICKY CADRIEL, an individual and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>WOLFSPEED, INC. a North Carolina Corporation; EDGAR BUSTAMANTE, an individual; and DOES 1 through 100, inclusive,<br><br>Defendant. | Case No. 24-5314<br><br>**DEFENDANTS WOLFSPEED, INC. AND EDGAR BUSTAMANTE'S NOTICE OF REMOVAL**<br><br>**[28 U.S.C. §§ 1332, 1441, 1446, AND 1453]** |

TO THE CLERK OF THE ABOVE-ENTITLED COURT AND PLAINTIFF:

PLEASE TAKE NOTICE that Defendants WOLFSPEED, INC. ("Wolfspeed") and EDGAR BUSTAMANTE ("Bustamante") (Wolfspeed and Bustamante collectively "Defendants") hereby give notice of removal of the civil action filed as a putative class action, *Ricky Cadriel v. Wolfspeed, Inc., a North Carolina Corporation; Edgar Bustamante, an individual and Does 1 through 100*, Case No. 24CV439054 (the State Court Action), from the California Superior Court in and for Santa Clara County to the United States District Court, Northern District of California.

Defendants file this Notice of Removal (the Notice) pursuant to 28 U.S.C. §§ 1332, 1441, 1446, and 1453.  This removal is based on the following grounds.

/ / /

## I. JURISDICTION

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1332, 1441, 1446, and 1453. Defendants remove this case pursuant to the Class Action Fairness Act (CAFA), 28 U.S.C. § 1332(d). The putative class includes more than 100 class members; minimal diversity exists between the class and Defendants; and the matter in controversy exceeds the sum of $5,000,000, exclusive of interest and costs. 28 U.S.C. § 1332(d)(2)-(6).

## II. DIVISIONAL ASSIGNMENT

2. This case should be assigned to the San Jose division because Plaintiff alleges his claims arose in the County of Santa Clara. (Ex. 1 [Complaint], ¶ 13.)

## III. BACKGROUND

3. Ricky Cadriel, on behalf of himself and all others similarly situated, filed the State Court Action on May 16, 2024. The Complaint is attached as Exhibit 1.

4. On July 17, 2024, Plaintiff served the Complaint by personal service on Wolfspeed's agent for service of process. Attached as Exhibit 2 is a copy of the summons, complaint, civil lawsuit notice, order deeming case complex, civil case cover sheet, and alternative dispute resolution information sheet that Plaintiff, via process server, served on Wolfspeed's agent on that date. This Notice is timely, as it is filed within thirty (30) days of the date on which Wolfspeed was served with Plaintiff's Complaint. 28 U.S.C. § 1446(b).

5. Pursuant to 28 U.S.C. § 1446(a), copies of all orders, pleadings, and process which have been served upon Wolfspeed, are attached as Exhibits 1 and 2.

6. Upon information and belief, Bustamante was improperly served by substitute service at his former place of business on July 29, 2024. Nevertheless, Bustamante has appeared in this action and joins in this notice of removal. Defendants have filed an answer in the State Court Action, which is attached as Exhibit 3.

7. Venue is proper because the State Court Action was pending in this district. 28 U.S.C. sections §§ 1441(a) and 1391(b).

8. Defendants will, upon filing this notice of removal, give notice of the removal to Plaintiff and the Superior Court.

## IV. REMOVAL IS PROPER PURSUANT TO THE CLASS ACTION FAIRNESS ACT

### A. The State Court Action Meets CAFA's Definition Of A "Class Action."

9. Plaintiff brings his claims pursuant to California's class action statute, California Civil Procedure Code section 382, and "seeks to represent a class of all current and former non-exempt employees" within the class period. (Ex. 1 at ¶ 26.) Plaintiff alleges the putative class consists of a "well-defined community of interest in the litigation, and the proposed Class is easily ascertainable." (*Id.* at ¶ 28.)

10. As explained further below, the State Court Action meets the following additional requirements for this Court to exercise jurisdiction: (a) the putative class includes more than 100 class members, (b) minimal diversity exists between the class and Defendants, and (c) the matter in controversy exceeds the sum of $5,000,000, exclusive of interest and costs. 28 U.S.C. § 1332(d)(2)-(6).

### B. Defendants Reserve All Rights, Arguments, And Defenses

11. Defendants do not herein make any admissions about Plaintiff's claims or the putative class's claims, and expressly deny them. Defendants acted in good faith at all times and did not commit the violations Plaintiff alleges.

12. Defendants reserve all rights, arguments, and defenses in this case, including that the putative class should not be certified, that the putative class contains fewer members than the Complaint alleges, and that Plaintiff and the putative class members are not entitled to any damages. Defendants base this Notice on only the allegations in the Complaint. *See Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 593 (2013) (to determine removability under CAFA, a district court must examine the case "as of the time it was filed in state court"); *United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO, CLC v. Shell Oil Co.*, 602 F.3d 1087, 1091 (9th Cir. 2010) (removal is based on putative class *allegations*, not whether class is ultimately certified).

### C. The Putative Class Includes More Than 100 Members

13. The putative class is greater than 100 persons, as required by 28 U.S.C. § 1332(d)(5)(B).

14. Plaintiff seeks to represent "a class of all current and former non-exempt employees within the State of California" dating from four years preceding Plaintiff filing his Complaint on May 22, 2024, "until the time that notice of the class action is provided to the class." (Ex. 1 at ¶ 26.) He alleges there were at least seventy-five class members in this time frame. (Ex. 1 at ¶ 29.)

15. According to Wolfspeed's files, as of August 14, 2024, there are 134 non-exempt employees in California during the putative class period. All of these employees are former employees because Wolfspeed no longer employs non-exempt employes in California.

**D.   Minimal Diversity Exists Between the Putative Class and Defendants**

16. Plaintiff is a California citizen. An individual is a citizen of the state where he is domiciled. 28 U.S.C. § 1332(a)(1). Plaintiff alleges he is a California resident. (Exhibit 1 at ¶ 2.) He alleges no other domicile or citizenship. This Court deems residency "prima facie evidence of domicile and citizenship." *Cisneros Pantoja v. RAMCO Enterprises, L.P.*, 2019 WL 5959630, at *10 (N.D. Cal. Nov. 13, 2019).

17. Wolfspeed is a North Carolina corporation. Its principal place of business is in North Carolina. Therefore, Wolfspeed is a citizen of North Carolina.

**E.   The Amount In Controversy Exceeds $5,000,000**

18. The aggregate amount in controversy exceeds $5,000,000, as required by 28 U.S.C. § 1332(d)(6).

19. Defendants do not admit liability, and expressly deny that Plaintiff or any member of the putative class are entitled to any damages. Nonetheless, the amount in controversy "does not mean likely or probable liability; rather, it refers to *possible* liability." *Jauregui v. Roadrunner Transportation Servs., Inc.*, 28 F.4th 989, 994 (9th Cir. 2022) (internal citations omitted); *Lewis v. Verizon Communications, Inc.,* 627 F.3d 396, 400 (9th Cir. 2010) ("The amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of defendant's liability."); *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1198 n.1 (9th Cir. 2015) ("Even when defendants have persuaded a court upon a CAFA removal that the amount in controversy exceeds $5 million, they are still free to challenge the actual amount of damages in subsequent proceedings and at trial.").

20.     Here, Plaintiff seeks compensatory damages for unpaid wages, liquidated damages, penalties, and attorney's fees.  (Ex. 1, p. 22, Prayer.)  Plaintiff does not specify in his Complaint the amount of damages he seeks; thus, Defendants must allege Plaintiff's damages in this Notice. But Defendants only need to make "plausible allegations" that the amount in controversy has been met, and need not submit evidence to support it.  *Acad. of Country Music v. Cont'l Cas. Co.*, 991 F.3d 1059, 1069 (9th Cir. 2021); *see also Jauregui v. Roadrunner Transportation Servs., Inc.*, 28 F.4th 989, 992 (9th Cir. 2022)*; Ibarra*, 775 F.3d at 1197.

21.     "[I]n most wage and hour class actions, CAFA amount-in-controversy estimates are premised on three variables: (1) the total number of possible violations; (2) the frequency at which violations might have occurred; and (3) the potential cost associated with each hypothetical violation." *Salatino v. Am. Airlines, Inc.*, 2024 WL 978963, at *3 (S.D. Cal. Mar. 7, 2024); *see also Amezcua v. CRST Expedited Inc.*, 653 F. Supp. 3d 712, 720 (N.D. Cal. 2023) (addressing plaintiff's challenges to those three categories).  The amount in controversy also includes future attorney's fees recoverable by statute.  *Fritsch v. Swift Transportation Co. of Arizona, LLC*, 899 F.3d 785, 794 (9th Cir. 2018).

22.     To support CAFA removal, Defendants should plead the number of employees and pay periods, because that information is in their control.  *Salatino*, 2024 WL 978963, at *3.  But Defendants are not required to establish a violation rate, because that would "come too close to requiring [Defendants] to 'prove its own liability.'"  *Salonga v. Aegis Senior Communities, LLC*, 2022 WL 1439914, at *6 (N.D. Cal. May 6, 2022); *see Harris v. KM Indus., Inc.*, 980 F.3d 694, 701 (9th Cir. 2020) ("A defendant need not make the plaintiff's case for it….")  Rather, Defendants need only make reasonable violation rate assumptions, grounded in the language of Plaintiff's Complaint.  *Salonga*, 2022 WL 1439914, at *6; *Salatino*, 2024 WL 978963, at *5.

     **1. Plaintiff's Overtime Wage Claim**

23.     Plaintiff alleges Defendants did not pay appropriate overtime wages "at times" throughout the class period but does not allege any facts about the alleged violation.  (Ex. 1, ¶ 40.)

24.     When a plaintiff alleges pay violations "at times," and in the absence of additional factual allegations, this court may assume plaintiffs allege a 40% violation rate – or two days per

week per employee – for purposes of CAFA removal calculations.  *Brown v. Janus of Santa Cruz*, 2021 WL 3413349, at *7 (N.D. Cal. Aug. 5, 2021) (25%-50% appropriate for "at times" violations); *see also Serrieh v. Jill Acquisition LLC,* 2023 WL 8796717, at *3 (E.D. Cal. Dec. 20, 2023) (collecting cases and stating "policy and practice" allegation could support alleged violation rate up to 60%).

25. Wolfspeed pays biweekly; thus, a twice-weekly violation rate would mean four violations per pay period.  During the putative class period, Wolfspeed paid the 134 members of the putative class $30.17 per hour on average.  This produces an average overtime rate of $45.26 per hour. Plaintiff alleges Defendants failed to pay overtime after eight hours a day, or forty hours a week as a result of "Defendants failing to accurately track and/or pay for all hours actually worked at the proper overtime rate of pay."  (Ex. 1, ¶ 40.)  The conjunctive language shows that Plaintiff has two distinct overtime claims: one for overtime hours worked for which no compensation was paid (i.e. derivative "off the clock" overtime hours), and another claim for overtime that was not paid at the proper overtime rate of pay, presumably where it was paid at the regular hourly rate of pay.

All of the 134 employees in the putative class regularly worked 40 hours or more per week and 8 hours or more per workday, with an average of 41.97 hours worked per week and an average of 8.39 hours worked per workday. The putative class members worked 14,320 workweeks from May 16, 2020 to August 14, 2024. Accordingly, Plaintiff alleges an amount in controversy on the "off the clock" overtime claim of $1,296,103.20 (two hours per workweek that were unpaid and should have been paid at $45.26). Plaintiff also alleges a separate overtime claim for failure to pay overtime at the proper rate of pay that is valued at $432,034.40 (two hours per workweek that was paid at the regular hourly rate of $30.17 but should have been paid at the overtime rate of $45.26). Plaintiff's alleges a total amount in controversy on this issue of **$1,728,137.60.**

### 2. Plaintiff's Minimum Wage Claim

26. Plaintiff alleges Defendants failed to pay minimum wages "at times" throughout the class period, but again fails to allege specific facts. (Ex. 1, ¶ 46.)  Thus this Court should again assume Plaintiff alleges a 40% violation rate for CAFA removal calculations.  *Brown, supra*, 2021

WL 3413349, at *7.

27. California's minimum wage for employers with 26 or more employees was $13 in 2020, $14 in 2021, $15 in 2022, $15.50 in 2023, and is $16 in 2024. Even using the low figure of $14.70 twice per workweek for the 134 employees who worked 14,320 workweeks during the applicable time frame, the amount Plaintiff alleges to be in controversy for unpaid minimum wages would be $421,008. Plaintiff also seeks liquidated damages (Ex. 1, ¶ 48); thus, Plaintiff alleges an amount in controversy on this issue of **$842,016.**

### 3. Plaintiff's Meal and Rest Period Claim

28. Plaintiff alleges Wolfspeed "at times" failed to provide appropriate meal and rest periods when employees worked more than five-hour shifts, and "at times" failed to provide premium pay. (Ex. 1, ¶¶ 53-54, 61-62.) This Court should again assume Plaintiff alleges a 40% violation rate for CAFA removal calculations, which would equal two meal period violations and two rest break violations per workweek. The penalties at that violation rate would be four hours of pay per week at each employees' regular rate. Cal. Lab. Code § 226.7. Based on 14,320 workweeks and an average hourly rate of $30.17, Plaintiff alleges an amount in controversy on the meal break claim of $864,068.80 and the same value on the rest break claim for a total of **$1,728,137.60**.

### 4. Plaintiff's Waiting Time Penalty Claim

29. Plaintiff alleges Defendants did not timely pay wages to employees who left Wolfspeed in the three years before the filing of the Complaint through the present. (Ex. 1 ¶¶ 67, 68.) Again, Plaintiff does not allege an "at times" violation rate. Rather, he alleges Defendants adopted "policies or practices" that caused the violation "at times." However, he also alleges Defendants had a "consistent policy" of failing to provide vacation pay to terminated employees. (*Id.* ¶ 98). It is therefore appropriate to assume Plaintiff alleges a 100% violation rate for purposes of determining the amount in controversy on this claim for CAFA removal. *Salonga*, 2022 WL 1439914, at *4 (N.D. Cal. May 6, 2022) ("courts in this district and others within the Ninth Circuit have accepted a 100-percent violation rate where the plaintiff has (1) tied waiting-time penalties to other claims and (2) the defendant specifically accounts for only terminated employees.");

*Trigueros*, 2021 WL 2649241, at *6 (assuming a 100% violation rate for all former employees when employee alleged that employer had a pattern and practice of failing to pay overtime to them); *Vasquez v. Randstad US, L.P.*, 2018 WL 327451, at *5 (N.D. Cal. Jan. 9, 2018) (assuming 100% violation rate for all former employees when employee alleged consistent policy of failing to pay wages due).

30. One hundred twenty-one of the former employees ended their employment with Wolfspeed between May 16, 2021 and December 2, 2023. On average, these employees worked 8.4 hours per day, or 8 regular hours and 0.4 hours of overtime. Plaintiff's allegations about whether and when Defendants paid the alleged wages are vague and contradictory, but he alleges Defendants' policy of failing to pay wages owed continues "to the present." (Ex. 1 ¶ 68.) Thus, this Court can assume for purposes of CAFA removal calculations that Plaintiff alleges 121 employees are still entitled to the maximum 30-day penalty. *Trigueros*, 2021 WL 2649241, at *6; *Vasquez*, 2018 WL 327451, at *5.

31. The average hourly rate for the former employees whose employment ended in the putative waiting time class period is $30.64, and the average overtime rate for the same group of former employees is $45.95. Multiplied by a 30-day waiting period penalty and 8.4 hours per day, Plaintiff alleges an amount in controversy on this issue of **$956,519.52**.

### 5. Plaintiff's Wage Statement Claim

32. Plaintiff alleges Defendants failed to give Plaintiff and the putative class members accurate wage statements from May 16, 2023 to the present. (Ex. 1, ¶ 76.) Ninety-two individuals worked a total of 1,190 pay periods during this time period. Again, Plaintiff alleges Defendants adopted "policies and practices" that resulted in this failure "at times." (*Id.*) When a plaintiff does not allege a violation rate but alleges the defendant had a "pattern and practice" of violations, it is appropriate to assume Plaintiff alleges a 50% violation rate. *Brown*, 2021 WL 3413349, at *5 (50% violation rates were appropriate for policies that were "uniformly administered"); *Ramirez v. HV Glob. Mgmt. Corp.*, 2022 WL 1210402, at *5 (N.D. Cal. Apr. 25, 2022) (noting a common range of 25% to 60% for "pattern or practice" of violations); *see also Serrieh,* 2023 WL 8796717, at *3.

33. The wage statement penalty is $50 for the first violation and $100 for subsequent pay periods, for a maximum penalty of $4,000 per employee. Cal. Lab. Code § 226(e). The putative class members who worked from May 16, 2023 to the present worked a total of 1190 pay periods. Assuming Plaintiff alleges a 50% violation rate for purposes of CAFA removal, Plaintiff alleges an amount in controversy on this issue of **$57,200**.

### 6. Plaintiff's Expense Reimbursement Claim

34. Plaintiff alleges Defendants "at times" failed pay employees for their work-related use of personal items, including cellular phone usage. (Ex. 1, ¶ 91.) Putative class members worked approximately 7,195 pay periods during this time period. Plaintiff's allegations are so imprecise and unsupported by facts that it is difficult to estimate Plaintiff's alleged violation or reimbursement rates. But this Court may assume Plaintiff alleges a 40% violation rate based on Plaintiff's "at times" allegations. Estimates in other cases for cell phone reimbursement alone have ranged from $30 to 80% of the full monthly cost for cell phone service. *Biag v. King George - J&J Worldwide Servs. LLC*, 2020 WL 4201192, at *6 (S.D. Cal. July 22, 2020); *Tehrani v. Macys W. Stores, Inc.*, 2016 WL 1559085, at *8 (C.D. Cal. Apr. 18, 2016). Assuming Plaintiff alleges $20 in reimbursement per pay period for work-related cell phone usage that Defendants allegedly did not reimburse the putative class, at an assumed 40% violation rate, this would equal $8 per pay period. Thus Plaintiff alleges an amount in controversy on this issue of **$57,560**.

### 7. Plaintiff's Vacation Pay Claim

35. Plaintiff alleges Defendants did not pay his and other putative class members who left the company their vested vacation pay for at least four years prior to the filing of the Complaint. (Ex. 1 at ¶¶ 96-98.) Plaintiff claims Defendants had "a consistent policy" of failing to provide this pay. (*Id.*) Courts may properly assume plaintiffs allege a 100% violation rate based on "consistent policy" allegations. *Vasquez v. Randstad US, L.P.*, 2018 WL 327451, at *5 (N.D. Cal. Jan. 9, 2018).

36. A 100% violation rate assumption is particularly appropriate here, where Plaintiff alleges "a consistent policy" only in this claim, as contrasted with the "at times" allegations in his other claims. The Court should assume this distinction is intentional and meaningful, and that

Plaintiff alleges a higher vacation pay violation rate than the violation rate in his other claims.

37. Plaintiff does not allege how much vacation pay to which he or other putative class members are allegedly entitled. There could be a significant range in numbers, because each employee accrued between 4.62 and 10 hours of paid time off each pay period, subject to an accrual cap of between 240 and 560 hours, depending on length of employment. These putative class members may have anywhere from zero to 560 hours of accrued and unused vacation time depending on the amount of vacation time used and their length of employment. Defendants will conservatively estimate that putative class members on average had 30 hours of accrued and unused vacation time. The average hourly rate for Wolfspeed's former employees in the putative class period is $30.17 per hour. Thus, Plaintiff alleges an amount in controversy on this issue of **$121,283.40.**

Defendants reserve the right to provide additional damages estimates based on this claim if Plaintiff challenges these amounts.

### 8. Plaintiff's Attorney's Fee Request

38. Plaintiff seeks attorney's fees based on several causes of action, including for his derivative unfair competition claim. This Court generally agrees with a 25% benchmark for fees, when calculating the amount in controversy under CAFA. *Fuller v. Bloom Inst. of Tech.*, 2023 WL 7550043, at *7 (N.D. Cal. Nov. 13, 2023).

39. The total compensatory damages Plaintiff alleges is **$5,490,854.12.** Twenty-five percent of that amount is **$1,372,713.53.**

40. Defendants have therefore met their burden to show the amount in controversy meets the CAFA $5,000,000 minimum threshold, without waiver of all rights and future arguments that they have no liability whatsoever.

### F. No Exception Applies to CAFA Removal

41. The "local controversy" and "home state" exceptions to CAFA removal do not apply here. Wolfspeed, which is not a California resident, is the primary defendant. It is the only defendant who would pay any judgment, or be directly responsible for the conduct Plaintiff alleges. *Singh v. Am. Honda Fin. Corp.*, 925 F.3d 1053, 1068-70 (9th Cir. 2019).

## V. CONCLUSION

For the foregoing reasons, Defendants hereby remove this case to the United States District Court for the Northern District of California.

Dated: August 16, 2024　　　　　　QUARLES & BRADY LLP

By: /s/ *Nora J. Steinhagen*
AARON A. BUCKLEY
NORA J. STEINHAGEN
Attorneys for Defendants Wolfspeed, Inc. and Edgar Bustamante