UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| RICKY CADRIEL,<br><br>    Plaintiff,<br><br>v.<br><br>WOLFSPEED, INC., et al.,<br><br>    Defendants. | Case No.  24-cv-05314-EJD<br><br>**ORDER GRANTING PLAINTIFF'S MOTION TO REMAND**<br><br>Re: ECF No. 29 |

Plaintiff Ricky Cadriel brings this putative class action against his former employers, Defendants Wolfspeed, Inc. and Edgar Bustamante, for various state law wage and hour violations. Defendants removed the action to federal court under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d). Not. of Removal, ECF No. 1. Before the Court is Plaintiff's motion to remand on the basis that Defendants have failed to establish the requisite amount in controversy. Mot., ECF No. 14. The Court finds the matter suitable for decision without oral argument pursuant to Civil Local Rule 7-1(b). Having carefully reviewed the parties' briefing, the Court GRANTS Plaintiff's motion to remand.

I. **BACKGROUND**

Plaintiff Ricky Cadriel is a California resident who worked for Defendants from approximately August of 2022 to May of 2023. Compl. ¶ 2, ECF No. 1-1. According to him, Defendants failed to follow the California Labor Code, causing both Plaintiff and his fellow California employees to lose wages. *Id.* ¶¶ 14–23. As a result, Plaintiff filed this putative class action, seeking to represent a class of "all current and former non-exempt employees of Defendants within the State of California at any time commencing four (4) years preceding the filing of Plaintiff's complaint up until the time that notice of the class action is provided to the class." *Id.* ¶ 26.

Case No.: 24-cv-05314-EJD
ORDER GRANTING MOT. TO REMAND        1

Based on these alleged violations, Plaintiff filed suit in Santa Clara County Superior Court on May 16, 2024, bringing the following ten causes of action: (1) failure to pay overtime wages; (2) failure to pay minimum wages; (3) failure to provide mandated meal periods; (4) failure to provide mandated rest periods; (5) failure to timely pay all wages due upon separation of employment; (6) failure to maintain and provide accurate itemized wage statements; (7) failure to timely pay wages; (8) failure to reimburse necessary business expenses; (9) failure to pay unused vested vacation days upon resignation; and (10) violation of California's Unfair Competition Law.[1] *Id.* ¶¶ 36–105.

On August 26, 2024, Defendants removed the instant action to this Court, asserting that this Court has jurisdiction under CAFA because "[t]he putative class includes more than 100 class members; minimal diversity exists between the class and Defendants; and the matter in controversy exceeds the sum of $5,000,000, exclusive of interest and costs." Not. of Removal ¶ 1. Plaintiff filed his motion to remand on September 13, 2024. Mot. Defendants filed their opposition on September 27, 2024. Opp'n, ECF No. 17. Plaintiff filed his reply on October 4, 2024. Reply, ECF No. 18.[2]

Plaintiff does not contend that Defendants fail to satisfy CAFA's minimal diversity and minimum class size requirements. Rather, Plaintiff seeks to remand solely on the ground that Defendants have not sufficiently shown that there is more than $5,000,000 in controversy, as required to establish federal jurisdiction under CAFA.

## II.   LEGAL STANDARD

A suit filed in state court may be removed to federal court if the federal court would have had original jurisdiction over that suit. 28 U.S.C. § 1441(a). As relevant here, CAFA confers federal courts the jurisdiction to hear class actions where (1) at least one plaintiff and one

---

[1] Plaintiff argues that this Court lacks equitable jurisdiction over his Unfair Competition Law claim. Because the Court grants Plaintiff's motion to remand on other grounds, it does not address this issue.

[2] Plaintiff filed objections to the declarations that Defendants submitted in opposition to the remand motion. ECF No. 19. Plaintiff also objected to Defendants' request for judicial notice. ECF No. 20. Because the Court grants Plaintiff's motion to remand on grounds unrelated to these objections, the Court does not address them.

Case No.: 24-cv-05314-EJD
ORDER GRANTING MOT. TO REMAND     2

defendant are citizens of different states; (2) the class has more than 100 members; and (3) the aggregate amount in controversy exceeds $5,000,000, exclusive of interests and costs. 28 U.S.C. § 1332(d). Under CAFA, the removing parties bear the burden of establishing removal jurisdiction. *Abrego Abrego v. Dow Chem. Co.*, 443 F.3d 676, 685 (9th Cir. 2006). Unlike in most removal cases where there is a presumption against removal, "no antiremoval presumption attends cases invoking CAFA." *Dart v. Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 89 (2014).

Plaintiff contests only CAFA's amount in controversy requirement. The amount in controversy is "the amount at stake in the underlying litigation." *Jauregui v. Roadrunner Transp. Servs., Inc.*, 28 F.4th 989, 994 (9th Cir. 2022) (quoting *Theis Rsch., Inc. v. Brown & Bain*, 400 F.3d 659, 662 (9th Cir. 2005)). This amount at stake "does not mean likely or probable liability; rather it refers to *possible* liability." *Id.* (quoting *Greene v. Harley-Davidson, Inc.*, 965 F.3d 767, 772 (9th Cir. 2020)). "[T]he amount in controversy is supposed to be an estimate of the *entire* potential amount at stake in the litigation." *Id.*

When evaluating the amount in controversy, courts proceed along a three-step process. First, if a plaintiff makes a good faith allegation about the amount in controversy in her complaint, courts accept that allegation. *Dart*, 574 U.S. at 87. Second, if the complaint does not contain such an allegation, courts accept the amount in controversy allegation in a defendant's notice of removal unless either the plaintiff or the court questions that allegation. *Id.* Finally, if the plaintiff or the court challenges the defendant's allegation, the defendant must supply enough evidence to establish that the amount in controversy requirement is satisfied. *Id.* at 88–89. Specifically, the defendant must establish the amount in controversy by a preponderance of the evidence. *Guglielmino v. McKee Foods Corp.,* 506 F.3d 696, 699 (9th Cir. 2007).

There is one additional complication to this process, though. Not every challenge to CAFA's amount in controversy requirement is one that triggers a defendant's obligation to supply evidence. Challenges to the amount in controversy can be either facial or factual. *Salter v. Quality Carriers, Inc.*, 974 F.3d 959, 964 (9th Cir. 2020). A facial attack "accepts the truth of the [] allegations but asserts that they are insufficient on their face to invoke federal jurisdiction." *Id.*

Case No.: 24-cv-05314-EJD
ORDER GRANTING MOT. TO REMAND      3

(internal quotation marks omitted) (quoting *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014)). Because facial attacks accept the truth of a defendant's allegations, they do not involve challenging those allegations. Thus, a defendant confronted with a facial attack to CAFA's amount in controversy requirement need not provide evidence. *Id.* at 964–65; *Ehrman v. Cox Commc'ns, Inc.*, 932 F.3d 1223, 1228 (9th Cir. 2019). By contrast, a factual attack "contests the truth of the [] factual allegations." *Salter*, 974 F.3d at 964 (quoting *Leite*, 749 F.3d at 1121). While such attacks usually introduce evidence outside the pleadings, *id.*, they are not required to. *Harris v. KM Indus., Inc.*, 980 F.3d 694, 700 (9th Cir. 2020). A plaintiff makes a factual attack by "challeng[ing] the truth of the defendant's jurisdictional allegations by making a reasoned argument as to why any assumptions on which they are based are not supported by evidence." *Id.*

Here, the complaint does not contain an allegation about the amount in controversy. *See* Compl. Defendants, meanwhile, allege that the amount in controversy exceeds $6,000,000. Not. of Removal ¶¶ 23–40. Through his motion to remand, Plaintiff challenges Defendants' calculation. Although Plaintiff does not offer his own evidence, he contends that the assumptions Defendants used to calculate their alleged amount in controversy are unreasonable. Therefore, Plaintiff has made a factual attack under *Harris*, meaning that Defendants have "the burden of proving by a preponderance of the evidence that [their] assumptions were reasonable" and must produce competent evidence. *Id.* at 701.

### III. DISCUSSION

#### A. Defendants' Estimate of Potential Damages

To support their amount in controversy allegations and calculations, Defendants provided evidence in the form of declarations from Nora Steinhagen and Emily Griego. Ms. Griego, a Senior HR Solutions Specialist at Wolfspeed, reported that she assembled a "Class Data Spreadsheet" that contains employment information for the putative class members. Griego Decl. ¶ 4, ECF No. 17-2. The Class Data Spreadsheet contains information about non-exempt employees in California, including those employees' start and end dates, average hourly wages, average hours worked per week, and average hours worked per day. *Id.* Ms. Steinhagen, an attorney for Defendants, then reviewed the Class Data Spreadsheet to derive figures such as the

Case No.: 24-cv-05314-EJD
ORDER GRANTING MOT. TO REMAND    4

number of non-exempt employees, their average wages, their average hours worked, and the number of pay periods during the applicable period. Steinhagen Decl., ECF No. 17-1. Based on the information provided in the Steinhagen and Griego Declarations, Defendants calculate the following amounts in controversy for each claim, totaling $6,863,567.65:

- **Failure to pay overtime wages**: Defendants assume a 40% violation rate based on the complaint's allegation that violations occurred "at times." Not. of Removal ¶¶ 23–24. Based upon this assumption and data in the provided declarations, Defendants calculate an amount in controversy of $1,728,137.60 for this claim. *Id.* ¶ 25.

- **Failure to pay minimum wages**: Defendants assume a 40% violation rate based on the complaint's allegation that violations occurred "at times." *Id.* ¶ 26. Based on this assumption and data in the provided declarations, Defendants calculate an amount in controversy of $842,016.00 for this claim. *Id.* ¶ 27.

- **Failure to provide rest periods**: Defendants assume a 40% violation rate based on the complaint's allegation that violations occurred "at times." *Id.* ¶ 28. Based on this assumption and data in the provided declarations, Defendants calculate an amount in controversy of $864,068.80 for this claim. *Id.*

- **Failure to provide meal periods**: Defendants assume a 40% violation rate based on the complaint's allegation that violations occurred "at times." *Id.* Based on this assumption and data in the provided declarations, Defendants calculate an amount in controversy of $864,068.80 for this claim. *Id.*

- **Failure to pay wages due upon termination**[3]: Defendants assume a 100% violation rate based on the complaint's allegation that Defendants had a "consistent policy" of failing to provide vacation pay to terminated employees. *Id.* ¶ 29. Based on this assumption and

---

[3] Defendants mistakenly labeled this claim as a claim for waiting time penalties. However, they cite to allegations in the complaint discussing a claim for failure to pay wages due upon termination.

Case No.: 24-cv-05314-EJD
ORDER GRANTING MOT. TO REMAND    5

data in the provided declarations, Defendants calculate an amount in controversy of $956,519.52 for this claim.[4]  *Id*. ¶¶ 30–31.

- **Wage statement violations**: Defendants assume a 50% violation rate based upon the complaint's allegation that Defendants adopted "policies and practices" causing these violations.  *Id*. ¶ 32.  Based on this assumption and data in the provided declarations, Defendants calculate an amount in controversy of $57,200.00 for this claim.  *Id*. ¶ 33.

- **Expense reimbursement violations**: Defendants assume a 40% violation rate based on the complaint's allegation that violations occurred "at times."  *Id*. ¶ 34.  Based on this assumption, Defendants calculate an amount in controversy of $57,560.00 for this claim. *Id*.

- **Vacation pay violation**s:  Defendants assume a 100% violation rate based on the complaint's allegations that Defendants had a "consistent policy" of failing to pay vested vacation days.  *Id*. ¶¶ 35–36.  Based on this assumption and data in the provided declarations, Defendants calculate an amount in controversy of $121,283.40 for this claim. *Id*. ¶ 37.

- **Attorneys' fees**: Defendants calculate attorneys' fees at 25% of the damages calculated above, which total $5,490,854.12, resulting in an estimate of $1,372,713.53 in attorneys' fees.  *Id*. ¶ 39.

### B. Violation Rates for the Overtime, Minimum Wage, Rest Period, Meal Period, and Expense Reimbursement Claims

Plaintiff argues that Defendants' calculations are flawed because Defendants unreasonably and speculatively assume a 40% violation rate for the overtime, minimum wage, rest period, meal period, and expense reimbursement claims.  Reply 5–8.  Plaintiff claims that this is inconsistent with the language of the complaint, which clarifies that violations occurred "at times," and that Defendants did not offer any extrinsic evidence which supports the assumption of such a violation

---

[4] The Court was unable to replicate Defendants' calculations, as the Court calculated an amount in controversy of $956,505.00.  This discrepancy is not material to the Court's analysis, so the Court uses the amount that Defendants calculated.

Case No.: 24-cv-05314-EJD
ORDER GRANTING MOT. TO REMAND        6

rate. *Id.* Defendants respond that the 40% violation rates are reasonable since they are consistent with the complaint's allegations that these violations occurred "at times" and with case law addressing similar language. Opp'n 5–7.

To prevail against Plaintiff's motion to remand, Defendants need not prove that their assumptions are accurate; rather, they only need to show that their assumptions have "some reasonable ground underlying them." *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 927 (9th Cir. 2019) (quoting *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1199 (9th Cir. 2015)). This does not require Defendants to prove they actually violated the law at the assumed rate. *Id.* Still, the "burden of demonstrating the reasonableness of the assumptions on which the calculation of the amount in controversy [is] based remain[s] at all times with [Defendants]." *Harris*, 980 F.3d at 701. Thus, Defendants must either point to evidence or to allegations in the complaint that support their assumptions. *Arias*, 936 F.3d at 925. An assumption "cannot be pulled from thin air," and "a defendant cannot establish removal jurisdiction by mere speculation and conjecture, with unreasonable assumptions." *Ibarra,* 775 F.3d at 1197, 1199.

The language that the complaint uses to describe the frequency of the alleged violations is key to evaluating the reasonableness of Defendants' assumption. *Ortiz v. Sheraton Operating LLC,* No. 24-cv-05104, 2024 WL 4625951, at *6 (C.D. Cal. Oct. 30, 2024) (citation omitted) ("Whether the alleged violations occur at times, as a matter of pattern and practice, or uniformly, as alleged in the complaint, has a significant impact on the amount in controversy calculation."). That is because the complaint's language "informs the court's adoption of a violation rate expressed as a percentage when calculating the amount in controversy." *Id.* (citation omitted). The phrase "at times," which appears in all the claims at issue in this Section, limits how often the alleged violations occurred. *Davis v. Empire Chauffeur Serv., Ltd.*, No. 2:23-cv-07968, 2024 WL 1217377, at *6 (C.D. Cal. Mar. 18, 2024). This language indicates that the violations "may have been a sporadic rather than regular failing." *Demaria v. Big Lot Stores-PNS, LLC*, No. 2:23-cv-00296, 2023 WL 6390151, at *6 (E.D. Cal. Sept. 29, 2023).

District courts within the Ninth Circuit have reached different conclusions about the violation rates that can reasonably be assumed from the phrase "at times." Some courts have held

Case No.: 24-cv-05314-EJD
ORDER GRANTING MOT. TO REMAND    7

that no violation rate can reasonably be assumed from this language alone. *See, e.g.*, *Duran v. Allegis Glob. Sols., Inc.*, No. 20-cv-09025, 2021 WL 3281073, at *3 (N.D. Cal. Aug. 2, 2021) (finding a once-per-week violation rate unreasonable because "[i]t would be just as consistent with the complaint to assume a frequency of once-per-month, or possibly once-per-quarter"); *Siaosi v. TA Operating LLC*, No. 23-cv-1240, 2023 WL 5985488, at *6 (C.D. Cal. Sept. 14, 2023) (finding a 5% violation rate unreasonable in the absence of any case-specific extrinsic evidence); *Gonzalez v. H&M Hennes & Mauritz L.P.,* No. 8:21-cv-01611, 2022 WL 179292, at *3–4 (C.D. Cal. Jan. 20, 2022) (finding a 20% violation rate unreasonable). Other courts have found that it is reasonable to assume a violation rate of around 20% based on the use of "at times." *See, e.g.*, *Bonetti v. TriStruX LLC*, No. 24-cv-01319, 2024 WL 3225905, at *6–7 (N.D. Cal. June 27, 2024) (a 20% violation rate is reasonable based on the law of averages); *Ross v. Tata Consultancy Servs. Ltd.,* No. 24-cv-0798, 2024 WL 4122273, at *3 (C.D. Cal. Sept. 9, 2024) (finding a 20% violation rate reasonable); *Cabrera v. S. Valley Almond Co.*, No. 1:21-cv-00748, 2021 WL 5937585, at *6 (E.D. Cal. Dec. 16, 2021) (it is reasonable to apply a 20% rate for "at times" violations when no evidence as to frequency of violations is presented).

The Court finds that Defendants' calculations are flawed because their assumed violation rates rest on speculation and conjecture. Defendants claim that the 40% violation rates stem from the "at times" language of the complaint, but the Court disagrees. These violation rates are more accurately described as being "pulled from thin air" in the manner that the Ninth Circuit has prohibited. *See Ibarra*, 775 F.3d at 1199. Nothing about the phrase "at times" distinguishes a 40% violation rate from any other violation rate. For example, why choose 40% over 20% or 10%? Why not choose 50%? The use of "at times" in the complaint does not answer those questions. Therefore, the Court concludes that the complaint's use of "at times" does not, by itself, make it reasonable to assume a 40% violation rate.

Defendants cite to *Brown v. Janus of Santa Cruz,* No. 21-cv-00094, 2021 WL 3413349 (N.D. Cal. Aug. 5, 2021), and *Serrieh v. Jill Acquisition LLC,* 707 F. Supp. 3d 968 (E.D. Cal. 2023), as examples of courts accepting similar violation rates based on comparable language. Opp'n 7. These cases are not persuasive. *Brown* relied on another case, *Gallegos v. EC USA*

*Holdings Inc.*, to conclude that an "at times" allegation supported a 50% violation rate. *Brown*, 2021 WL 3413349, at *7 (citing *Gallegos v. EC USA Holdings Inc.*, No. 2:16-cv-03511, 2016 WL 8674592 (C.D. Cal. Oct 7, 2016)). But *Gallegos* adopted that 50% violation rate for two claims based on reasons not applicable in this case. For the first claim, use of the 50% rate would not be dispositive, so the *Gallegos* court used the proposed 50% rate "[w]ithout deciding" if it was reasonable. *Gallegos*, 2016 WL 8674592, at * 7. For the second claim, the plaintiff had submitted uncontroverted evidence of a 50% violation rate. *Id.* at *8. Neither of those two circumstances is present here, and *Gallegos* never held that a 50% violation rate was reasonable based solely on an "at times" allegation. Meanwhile, *Serrieh v. Jill Acquisition LLC* is distinguishable because it found a 40% violation rate to be a reasonable assumption when complaints contained "policy and practice" allegations, not the "at times" allegations at issue in this case. 707 F. Supp. 3d at 975.

Defendants do attempt to make some evidence-based arguments to justify using a 40% violation rate, but those arguments fail as well. Defendants argue that a 40% violation rate is reasonable with respect to their minimum and overtime wage claims, because putative class members worked on average 8.4 hours per workday and thus were entitled to minimum and overtime wages each shift. Opp'n 6. Defendants also argue that a 40% violation rate was reasonable with respect to the meal and rest period violations because each putative class member was presumptively entitled to at least one meal break and at least two rest breaks for every shift, and there were many "ways in which a meal and rest break violation may occur (i.e., missed, short, late, interrupted, on-duty)." *Id.* But the number of shifts for which an employee was *entitled* to minimum and overtime wages says nothing about the frequency at which the employer *denied* such wages. Similarly, the fact that putative class members were entitled to meal and rest breaks, and that Defendants could violate those entitlements in many ways, says nothing about the frequency at which such violations occur.

Finally, Defendants argue they are not required to comb through their own records to prove Plaintiff's case and, given the complaint's vague allegations and Plaintiff's failure to propose a different violation rate, the Court should treat their proposed 40% violation rate as reasonable. *Id.*

Case No.: 24-cv-05314-EJD
ORDER GRANTING MOT. TO REMAND    9

at 5–7. The Court rejects Defendants' arguments. Defendants, as the parties seeking removal, bear the burden of showing that their assumptions are reasonable. *Harris*, 980 F.3d at 701. CAFA does not relieve a defendant of that burden when a complaint is vague or a plaintiff seeking remand chooses not to submit her own evidence. As one court aptly noted:

> Faced with a vague pleading, it seems to this Court that the much-more-sensible route would be to try to pin Plaintiff down, in state court . . . , with respect to what the Complaint's allegations actually mean with respect to violation rates. Perhaps Defendants do this by serving interrogatories or requests for admission, perhaps by deposition, perhaps by moving for a more definite statement. Perhaps they simply get Plaintiff to identify what the violation rates would be *for Plaintiff,* and then use that information as a sample to extrapolate out the calculation for the entire class.

*Toribio v. ITT Aero. Controls LLC*, No. 19-cv-5430, 2019 WL 4254935, at *3 (C.D. Cal. Sept. 5, 2019). Taking this approach does not require Defendants to prove Plaintiff's case.

For these reasons, the Court finds that the Defendants' assumption of a 40% violation rate for the overtime, minimum wage, rest period, meal period, and expense reimbursement claims is unreasonable.

The Court now turns to the issue of what violation rate could be reasonably assumed from the complaint's "at times" language. Courts cannot automatically zero out a claim's value after finding a defendant's assumption to be unreasonable. *Jauregui*, 28 F.4th at 994. Only "if a defendant provided *no* evidence or clearly inadequate evidence supporting its valuation for a claim . . . might [it] be appropriate for a district court to assign that claim a $0 value." *Id.* Otherwise, courts should identify and apply an alternative assumption that it concludes is better based on the record. *Id.* In this case, it is appropriate to zero out the value of the overtime, minimum wage, meal period, rest period, and reimbursement claims because Defendants have provided no evidence about the frequency of such violations at all. But even if the Court applied a 20% violation rate to those claims—which, as the Court surveyed above, a number of other courts have applied to violations that allegedly occurred "at times"—while giving full credit to Defendants' calculations for all other claims, Defendants would still fail to establish that the amount in

controversy exceeds $5,000,000.[5]  Assuming a 20% violation rate, the amounts in controversy for the overtime, minimum wage, meal period, rest period, and reimbursement claims would be reduced by half compared to assuming a 40% violation rate.  Thus, the overtime claim would be worth $864,068.80, the minimum wage claim would be worth $421,008.00, the meal and rest period claims would each be worth $432,034.40, and the expense reimbursement claim would be worth $28,780.00.  Recalculating attorneys' fees with these numbers, and assuming 25% in fees as Defendants did, yields $828,232.13 in fees.  Altogether, then, Plaintiff's claims would only be worth up to $4,141,160.65, less than CAFA requires for amount in controversy.

## IV.  CONCLUSION

In sum, the Court finds that Defendants have failed to meet their burden of showing by a preponderance of the evidence that the amount in controversy is over $5,000,000.  Accordingly, the Court GRANTS Plaintiff's motion to remand.

**IT IS SO ORDERED.**

Dated: December 9, 2024

EDWARD J. DAVILA
United States District Judge

---

[5] For the avoidance of doubt, the Court notes that its own calculations below use Defendants' calculated amounts in controversy exactly for the following claims: failure to pay wages due upon termination ($956,519.52); wage statement violations ($57,200.00); and vacation pay violations ($121,283.40).

Case No.: 24-cv-05314-EJD
ORDER GRANTING MOT. TO REMAND      11